HUNTER, JR., ROBERT N., Judge, Dissenting.
The Fourth Amendment protects the "right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures ... and no Warrants shall issue, but upon probable cause...." U.S. Const. amend. IV. Our State Constitution protects these same rights by prohibiting general warrants, which "are dangerous to liberty" N.C. Const. art. I, section 20. To protect these rights, both courts created the exclusionary rule, making "all evidence seized in violation of the Constitution ... inadmissible in a State court as a matter of constitutional law." State v. Cherry, 298 N.C. 86, 92, 257 S.E.2d 551, 556-57 (1979).
Historically, the exclusionary rule has not been applied in civil proceedings. Quick v. North Carolina Div. of Motor Vehicles, 125 N.C.App. 123, 127, 479 S.E.2d 226, 228 n. 3 (1997) (citing United States v. Janis, 428 U.S. 433, 459-60, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) ). Our Supreme Court "has long viewed *72 drivers' license revocations as civil, not criminal, in nature." State v. Oliver, 343 N.C. 202, 207-08, 470 S.E.2d 16, 20 (1996) (citations omitted). Consequently, our Court has held that " evidence in a license revocation hearing ... is not subject to the exclusionary rule." Hartman v. Robertson, 208 N.C.App. 692, 698, 703 S.E.2d 811, 816 (2010) (citing Quick, 125 N.C.App. at 127 n. 3, 479 S.E.2d at 228-29 ).
Prior to Grady v. North Carolina, 575 U.S. ----, 135 S.Ct. 1368, 191 L.Ed.2d 459 (2015), *663 our Court noted this impasse, stating, "unless our Supreme Court holds otherwise the Fourth Amendment's exclusionary rule does not apply in civil proceedings such as driver's license revocation hearings...." Combs v. Robertson, --- N.C.App. ----, ----, 767 S.E.2d 925 (2015). Without the benefit of Grady, our Court has been obligated to affirm license revocation decisions that are based upon a record of unconstitutional evidence. See Hartman, 208 N.C.App. at 697, 703 S.E.2d at 815 ("Petitioner's second argument is that, because the traffic stop was illegal, the evidence gathered subsequent to the stop should have been suppressed. We disagree."); Combs, --- N.C.App. at ----, 767 S.E.2d at 926-27 ("[P]olice violated Petitioner['s] Fourth Amendment rights by stopping her without reasonable suspicion.... Without the exclusionary rule, we must ... affirm DMV's revocation of [Petitioner's] driver's license.")
This precedent was best critiqued by the United States Supreme Court in Grady, in the context of civil satellite based monitoring. At the State level, our Court "placed decisive weight on the fact that the State's monitoring program is civil in nature." Grady, 575 U.S. at ----, 135 S.Ct. at 1371 (citation omitted). We affirmed the order imposing Grady's satellite based monitoring, and our Supreme Court "summarily dismissed [his] appeal and denied his petition for discretionary review." Id. at ----, 135 S.Ct. at 1370 (citation omitted). On appeal, the United States Supreme Court granted certiorari and published a per curiam opinion. The Court reasoned, "the Fourth Amendment's protection extends beyond the sphere of criminal investigations." Id. at ----, 135 S.Ct. at 1371 (citing Ontario v. Quon, 560 U.S. 746, 755, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010) ; Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) ). The Grady Court held the monitoring program "is plainly designed to obtain information. And since it does so by physically intruding on a subject's body, it effects a Fourth Amendment search." Grady, 575 U.S. at ----, 135 S.Ct. at 1371. The Court vacated and remanded the case, directing "North Carolina courts [to] examine whether the States' monitoring program is reasonable-when properly viewed as a [Fourth Amendment] search...." Id.
*73 Other states have resolved this issue in their highest courts, protecting Fourth Amendment rights by applying the exclusionary rule to license revocation proceedings. See Olson v. Comm'r of Pub. Safety, 371 N.W.2d 552, 556 (Minn.1985) ; Pooler v. Motor Vehicles Div., 306 Or. 47, 755 P.2d 701 (1988) ; Vermont v. Lussier, 171 Vt. 19, 757 A.2d 1017 (2000) ; State v. Nickerson, 170 Vt. 654, 756 A.2d 1240 (2000). With the hindsight of Grady, our Supreme Court is now ripe to consider whether the exclusionary rule should apply in civil license revocation proceedings, to allow the trial court to determine whether a police search was "reasonable" and if any evidence obtained should be suppressed.
I would hold the majority's view of the standard of review is erroneously applied in this case and others arising from the revocation of driver's licenses. As the majority states, "the Superior Court review" shall be limited to whether there is sufficient evidence in the record to support the Commissioner's findings of fact and whether the conclusions of law are supported by the findings of fact and whether the Commissioner committed an error of law in revoking the license. N.C. Gen.Stat. § 20-16.2(e) (2015).
Here, I concur that Appellant has not produced record evidence that the procurement of his breathalyzer was the result of an illegal search. Under the procedures used to revoke his license, he could not do so because a hearing officer is not a judicial officer with the jurisdictional mandate to enforce an illegal search. Assuming arguendo that the search was illegal, then in that event, I would hold in favor of remanding to the Superior Court to make findings on the constitutional issue on whether the Commissioner committed an error of law in revoking the license. Otherwise, unconstitutionally procured evidence could be used to support a governmental action to revoke a license. The use of the writ of certiorari to make findings of fact to reach legal issues not within the jurisdictional mandate of a body they are reviewing is not novel but a traditional *664 use of the writ. See Wilson Realty Co. v. City and County Planning Bd. for City of Winston-Salem and Forsyth County, 243 N.C. 648, 655-56, 92 S.E.2d 82, 87 (1956) ("Certiorari, as an independent remedy, is designed to review and examine into proceedings of lower tribunals and to ascertain their validity and correct errors therein. The writ issues to review proceedings of inferior boards and tribunals which are judicial or quasi [-]judicial in nature.") (citation omitted).